(113 App. Div. 586.)

## ALLEN v. PIERSON et al.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

MORTGAGES—FORECLOSURE—POWER—CONSTRUCTION.

The owner of certain property transferred the same to his sons to carry on his nursery business thereon, whereupon the sons immediately mortgaged the property to secure payment of loans made, and to be made to carry on the business and the then existing debts and liabilities of the father. The mortgage provided that in case of default in the payment of the advances and loans made for the purpose of carrying on the business or in the payment of the claims continuing for 30 days, then the trustee or his successors in the trust might and on request in writing of any one on whose note default shall have been made or on the written request of a majority in amount of the holders of claims annexed, should take possession of the property and enforce the rights of creditors. *Held*, that the

holder of a secured claim against the mortgagors' father, which was included in the schedule annexed to the mortgage, but which was less in amount than a majority of all the claims of its class, had no authority to direct a foreclosure of the mortgage after the jointure of other creditors sufficient to make the amount of all their names a majority of the claims so annexed.

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Special Term, Seneca County.

Action by Addie E. Allen against Albert H. Pierson and others. From an interlocutory judgment, overruling a demurrer to the complaint for want of facts, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

George E. Zartman, for appellants.

Charles E. Opdyke and Henry E. Miller, for respondent.

WILLIAMS, J. The judgment should be reversed, and the demurrer sustained, with costs to the appellant with leave to the respondent to plead over on payment of the costs of the demurrer and of this appeal. The action is brought to foreclose a trust mortgage. The trustee was requested to bring the action, but failed to do so, and, thereupon, one of the cestui que trusts brought this action. The defect in the complaint is the failure to allege a request or notice to the trustee to bring the action made as provided in the mortgage. There is no dispute, but the action can be maintained by the cestui que trust, if the trustee failed to bring it, upon proper request or notice. The mortgage is annexed to the complaint, and formed a part thereof. The circumstances under which the mortgage was given are fully recited in the mortgage, and are in brief as follows:

June 17, 1897, Edwin C. Pierson owed debts to various parties amounting to $36,589.73; a list of which was annexed to the mortgage. He transferred all his real and personal property, nursery stock, and nursery business to his two sons, the mortgagors, and they gave the mortgage upon the property to the trustee William B. Clark. The mortgagors gave their promissory notes for the debts and liabilities constituting the then existing indebtedness of their father. The mortgage also recited that the sons might be obliged to borrow money not exceeding $4,000 annually, for the purpose of carrying on the business. This loan of $4,000 could only be made from time to time, however, on the consent and approval of the trustee. Notes were to be given, we assume, for these loans and advances. The mortgage was given to secure payment of such loans to carry on the business, and the then existing debts and liabilities, and the default clause in the mortgage was as follows:

"In case default shall be made in the payment of the advances and loans made to parties of the first part for the purpose of carrying on their business as aforesaid, or in the payment of the claims as aforesaid, and in the manner herein set forth, and if any such default shall continue for the space of 30 days, then and in such case, the said William B. Clark or his successors, in the trust, created or declared by this indenture, may and upon the request in writing of any one on whose note default shall have been made or upon the request in writing signed by a majority in amount of the holders of claims

hereto annexed shall take possession of said property, and enforce the right of said creditors, under these presents, by entry and sale of the property herein conveyed, in such manner as authorized by law or the practice of the court, * * * and after deducting from the proceeds of such sale, allowances for all expenses, or costs, to first reimburse said parties for their advances, made as herein provided, and then distribute the remaining proceeds arising from the sale, among the creditors, named in the list hereto annexed, in equal pro rata proportions, and without preference or priority to any, and if any surplus remains to pay the same to the parties of the first part, or to dispose of the same as any court of competent jurisdiction may direct."

It is alleged in the complaint that the plaintiff was one of the creditors holding claims against the father, and was named in the list annexed to the mortgage; that default occurred in the payment of her debt when due, and continued for 30 days, and then she gave notice in writing under the default clause in the mortgage, and requested that the trustee proceed to enforce her rights by taking possession of, and selling the property, and that the trustee refused to comply with such notice and request. The right of plaintiff to maintain this action is based upon such notice, request, and refusal. Under the clause in the mortgage, however, the notice and request, if it emanated from the creditors of the father, a list of whom was annexed to the mortgage, could only be effectual if signed by a majority in amount of the holders of those claims. Plaintiff's claim was only about $2,600, and the whole amount was upwards of $35,000.

There were two classes of creditors whose claims were secured by the mortgage: Those who made the loans and advances annually for carrying on the business, and any one of them could give the notice and make the request, but no one creditor in the list annexed to the mortgage could give the notice and make the request unless his claim was a majority in amount of the claim in such list. There can be no doubt as to this being the proper construction of the default clause in the mortgage. All this list of creditors held notes for their claims, and if any one of them holding such a note could alone give the notice and make the request, then the second clause relating to such notice and request would be meaningless. The suggestion that plaintiff was not a party to the trust agreement, and knew nothing about it, is absurd. She took her note under it, and her right of action, as alleged in her complaint, is founded upon it. Our construction of the default clause in the mortgage does not permit the plaintiff to maintain this action upon the facts alleged; and, therefore, the complaint fails to state facts constituting a cause of action, and the demurrer thereto must be sustained.

Interlocutory judgment reversed and demurrer sustained, costs, with leave to plead over upon payment of the costs of the demurrer and of this appeal.

NASH, J., concurs. SPRING, J., concurs in a separate memorandum. McLENNAN, P. J., dissents in an opinion. KRUSE, J., dissents in a separate memorandum.

SPRING, J. (concurring). The trust mortgage was given to secure two classes of creditors: The first, those who furnished money to carry on the business; the limit of which indebtedness was $4,000,

annually, and which must be incurred with the consent of the trustee. The second, the claims existing at the time of the giving of the mortgage. The sons of the original debtor were willing to step into the breach of the waning business and add their personal liability to that of their father; but only upon the condition of obtaining time and getting an opportunity to work off the debts by successful management of the business. In order to accomplish this purpose, they gave their notes to the original creditors, due some time ahead, insisting on the further provision that no sale of the premises should be had by the trustee except upon the written request of a majority of the indebtedness represented by these creditors of the same class. A reading of the trust mortgage denotes very clearly that these two classes of debts were distinct, and were to be treated differently. The aim was to make the premises pay the large outstanding indebtedness, and, in order to accomplish this object, and to induce the sons to carry on the farm, they must have time on the old debts and the power, within the limit of $4,000, to procure money to carry on the business. This fresh indebtedness was intended to be only temporary, and must have the preference.

The trust mortgage very plainly shows the preference of this new indebtedness; for in case of a sale of the premises pursuant to the trust mortgage, the avails were first to be applied in its liquidation. When permission is given to foreclose, these two classes of debts are again recognized, and the distinction maintained. In the case of advances, the preference is manifest. No one would loan with this large outstanding debt, unless the right to collect when due existed. Then the claims hereto annexed were provided for, but a majority was to determine when a foreclosure should be had. These debts are referred to indiscriminately as claims, notes, etc. For instance, at folio 34 the mortgage recites that the mortgagors have given their "promissory notes therefor," and a little lower down, notwithstanding notes have been given, they are referred to as claims. Again, at folio 42, the fresh indebtedness is termed "advánces," and the old outstanding indebtedness "claims," although all are represented by promissory notes. There is no confusion about them, for a note was given for each one. They were still claims against the original debtor. The scheme of the trust mortgage could not be carried out if any one of these claimants, whenever his note matured, of his own motion, could require the trustee to foreclose the mortgage.

The argument made in the dissenting opinion that in equity, irrespective of the agreement, any one with a due claim can foreclose, has no application. The parties here bound themselves by an agreement, and they must conform to its terms. It may be, that if a request had been made to the creditors upon facts presented to them, showing that the property was going to waste and a foreclosure of the mortgage was necessary to preserve the property, equity might interfere, even though a majority of the creditors did not join in the request to the trustee. But there is no allegation of that kind in the complaint. It is merely the attempt of a holder of a note representing one of these claims to ignore his agreement and to foreclose of his own accord with-

out consulting any of his co-claimants. Nor is there any warrant for the statement that the plaintiff was not a party to the trust mortgage. She accepted a note for her claim. She is foreclosing the mortgage, recognizing it as an existing contract, although it has no vitality, except to secure claims, one of which she holds. If she accepts the benefits of the trust agreement, she must also be governed by its provisions.

I think, construing the mortgage as a whole, a cause of action is not stated in the complaint.

McLENNAN, P. J. (dissenting). This is an appeal from an interlocutory judgment, overruling a demurrer interposed to the complaint, upon the ground that it failed to state facts sufficient to constitute a cause of action, entered in the office of the clerk of Seneca county on the 2d day of January, 1906, upon a decision of the Special Term of the Supreme Court held in and for said county. The action was commenced on the 16th day of October, 1905, on behalf of the plaintiff and all others similarly situated, to compel certain real and personal property, its income, rents, and profits, conveyed by their debtor to the defendants, for the purpose of securing the payment of his indebtedness, to be applied to such purpose; and in this action, the defendants having, as alleged, failed to perform their duty in the premises, she asks to be permitted to follow such property, and to have it devoted to the purpose for which her debtor conveyed the same, in accordance with the rules and practice of a court of equity. We think the judgment appealed from is correct. Indeed its correctness has practically been declared by the unanimous decision of this court rendered at the January, 1906, term (97 N. Y. Supp. 1127), wherein, in this action, an order appointing a receiver of the property in question pendente lite was unanimously affirmed. Of course, if the complaint does not state a cause of action, such order was erroneous. Upon that appeal precisely the same question was raised as upon this, and was decided adversely to appellant's contention. It follows logically that the court, as then constituted, considered that the complaint stated a good cause of action. I am of the opinion that the court should adhere to its former decision unanimously made, both because it was right, and, also, because such course will tend to promote the orderly administration of justice. If, however, it is deemed advisable to consider the question de novo, we are prepared to state the reasons which led us to assent to the former decision, and which lead us to dissent from the contrary decision about to be made by a majority of the court.

In substance, it is alleged in the complaint that one Edwin C. Pierson, about the year 1897, was indebted to the plaintiff in the sum of $2,600, and to 39 other persons in various amounts, in all aggregating $36,-589.73; that, for the purpose of securing the payment of such indebtedness, Edwin conveyed and transferred all his property, consisting of valuable nursery lands, nursery stock, and other personal property located at Waterloo, N. Y., to the defendants Albert H. and Frank J. Pierson, without any consideration except their agreement to pay the plaintiff and his other creditors in full; to give their promissory notes to said creditors for the amount of their claims, respectively; and to

convey the property and business transferred by Edwin to them to the defendant Clark, as trustee, by the execution and delivery of a trust deed or mortgage, which should provide for the payment of such notes, and also such sums as might be borrowed by Edwin's grantees with the consent of the trustee to enable them to carry on the business, not to exceed $4,000 per annum. It is alleged that Edwin so conveyed and transferred all his property to the defendants Albert H. and Frank J. Pierson; that they received and entered into possession of the same; that they executed and delivered to the plaintiff their promissory note for the amount of her claim, and to each of the other creditors of Edwin for the amount of their claims, respectively; that then they executed and delivered the mortgage or trust deed to the defendant Clark, conveying to him all the property received by them from Edwin. It is claimed: that such trust instrument contains conditions which prevent the plaintiff, and those similarly situated, from following such property, and having the same applied to the payment of her or their claims; it being insisted that by one clause of such agreement properly interpreted the plaintiff was precluded from enforcing the payment of her past due note because she could not, or did not, procure a majority in amount of the holders of such notes to join with her in demanding of the defendant trustee that the property conveyed by her debtor should be applied for such purpose. It is alleged in the complaint that plaintiff's note has been past due for more than five years; that the interest upon it has not been paid for two years last past; that Edwin's grantees, who are the defendant Clark's grantors, had been permitted by the trustee and are still permitted "to continue in the control, management, possession and enjoyment of such property, to the loss and detriment of the plaintiff and said claimants and creditors, the beneficiaries under and named in the mortgage or trust deed." It is also alleged that the property is inadequate security for the payment of the mortgage debt, and that a portion thereof is perishable. It is nowhere suggested that the plaintiff knew of or assented to the terms or conditions of the agreement by which her debtor assumed to convey his property to the defendants Albert H. and Frank J. Pierson, for the purpose of having it applied to the payment of his indebtedness, or that she knew of or assented to the terms and conditions of the trust agreement, by which Edwin's grantees assumed to convey such property to the defendant Clark, their alleged trustee.

My motion is that the law is well settled that the property of a debtor conveyed to another for the purpose of paying his debts, may be followed by the creditor and its application to such purpose compelled, wholly independent of any limitations which may be sought to be imposed by an agreement between the debtor and his grantee, where the question of the purchaser's bona fides is not involved. In my view, the plaintiff states a perfect cause of action when she alleges in her complaint that the defendants have property which belonged to her debtor, and which he conveyed to them for the purpose of securing the payment of her debt in the manner agreed to by them, and that they failed to perform such agreement on their part. Upon such failure, as I understand the law, she had a perfect right to ask a court of

equity to decree that such property so conveyed, or its proceeds, be devoted to the purpose for which it was conveyed, and so entirely independent of any agreement made between the grantor and grantee which might seek to limit such right. We think it is not the law in this state that a debtor may convey his property to another, and by agreement with him prevent the creditor from following such property and demanding that it be applied to the payment of the debt, where such creditor does not consent to, or is not a party to such alleged agreement. The contrary suggestion involves the proposition that a debtor may convey his property to another who agrees to pay his debts, and so fix it by agreement between them that the creditor may not compel the application of the property transferred to the payment of the debtor's indebtedness in reasonable manner. We think such is not the law; that the contention is abhorrent to common sense, and contrary to judicial decision. But, assuming the plaintiff is bound by the conditions of the mortgage or deed of trust which is annexed to and made a part of the complaint, to which, so far as appears, she did not assent, or of which she had no knowledge, but solely because she is seeking to enforce its conditions so far as favorable to her, we think she is entitled to maintain this action within the express terms of such agreement. The only objection to her right in that regard is that a majority in amount of the noteholders, the creditors of Edwin C. Pierson did not join with her in requesting the trustee Clark to commence an action of foreclosure. The language of the mortgage or trust deed is specific that such request may be made by "any one on whose note default shall have been made." Default had been made in the payment of plaintiff's note; she made request to have the trustee foreclose the mortgage; he refused, and thereupon she brought this action. The plaintiff complied with the requirements of the trust deed, as expressed by the literal meaning of the language employed. We think paragraph 2 of such agreement ought not to be construed as limiting the right of any holder of a note past due to commence an action of foreclosure to enforce the payment of such note until a majority in amount of the holders of such notes should acquiesce or join in demanding that such action of foreclosure be instituted. Such a construction of the trust agreement might practically destroy plaintiff's rights in the premises. Her note has been due and unpaid for five years. The interest thereon for the last two years has not been paid. The property which was transferred by her debtor for the purpose of securing the payment of her debt has not been applied to such purpose, and yet it is insisted that she is without remedy, because she cannot secure a majority in amount of those similarly situated with her to join in a demand that the payment of their debts be enforced. If such an interpretation of the meaning of the trust mortgage or deed is to prevail, then a majority in amount of the creditors of Edwin C. Pierson may forever prevent the plaintiff from enforcing the payment of her claim, and from compelling the property transferred by her debtor to be applied in payment of her debt. The plaintiff was not a party to any agreement which restricted her right to follow the property of her debtor and to have it applied in payment of her debt; and the provision in the trust

mortgage or deed specifically provides that it shall be so applied in case default is made in the payment of her note, and she demands that such action be taken by the trustee; and, in default thereof, she seeks to maintain this action on behalf of herself and of others similarly situated.

We conclude that wholly independent of the conditions or provisions of the mortgage or deed of trust which is made a part of the complaint, but to which the plaintiff was not a party, she had a right to follow the property conveyed by her debtor for the purpose of securing the payment of her debt and to have it applied for that purpose, into whosesoever hands it came, there being no question of bona fides.

We also conclude that, under the specific terms of the mortgage or deed of trust, the plaintiff was entitled to demand that such instrument be foreclosed, because of default having been made in the payment of her note; and the trustee, having failed to comply with her request to foreclose in that regard, she was entitled to maintain an action in her own name, and on behalf of all others similarly situated, for that purpose. Any other decision involves the proposition that a majority in amount of the creditors of Edwin C. Pierson, plaintiff's debtor, may prevent her indefinitely from collecting the debt due from him to her.

The decision about to be rendered seems to be based upon the principle that the holders of bonds secured by railroad or other corporate mortgage, and which refer to such trust instrument, are bound by the conditions and limitations therein contained. We think those cases are not analogous. There the holder of the bond purchases or owns it with full knowledge of and assenting to all the conditions and limitations, and therefore is bound by the same. In the case at bar nothing of the kind is disclosed by the complaint. Here the plaintiff only seeks to have the property of her debtor applied to the payment of her debt, and she insists that her right in the premises should not be hampered because of any agreement which her debtor made with the person to whom he transferred his property. That such rule is reasonable could not be better illustrated than by the facts in this case. Under the mortgage or deed of trust the grantees were given permission with the consent of the trustee to borrow $4,000 per annum, and if such option has been availed of, there is a total of $36,000 of debts placed under the mortgage or deed of trust in addition to the debts of the plaintiff and those similarly situated with her. Also, if the other creditors are situated as is the plaintiff in the circumstance that the interest has not been paid upon their claims for the two years last past, there are many thousand dollars more added to such mortgage indebtedness. We think the contention is not reasonable that the plaintiff should be compelled to sit still and see the indebtedness secured by such mortgage increased to such amount, practically doubled, and without power to protect her interests in the premises; she not being able to procure a majority in amount of the holders of notes similar to hers to join with her in enforcing her right.

We conclude that the interlocutory judgment is right; that it has been practically so decided by the unanimous decision of this court; and

that it should be affirmed, with costs, with leave to the defendant to plead over upon payment of the costs of the demurrer and of this appeal.

KRUSÉ, J., dissents in separate memorandum.

KRUSÉ, J. (dissenting). I dissent upon the ground that the plaintiff's note being due, she is within the express conditions of the mortgage which requires the trustee to foreclose the same "upon the request in writing of any one on whose note default shall have been made," and considering all of the terms and conditions of the mortgage supplemented by the allegations of the complaint that all of the indebtedness was represented by notes which became due and payable prior to January 1, 1901, it is not an unreasonable construction of the instrument to say that it was the intention to permit any one whose note became due to require the trustee to proceed to a foreclosure, and that in the event that the holder of such an obligation does not make such a request, or that the trustee does not of his own volition proceed to foreclose the same, then that the majority of the holders of such notes might require the trustee to proceed to foreclose the mortgage without regard to the fact that the notes so held by the persons making such request might not be due and payable at that time.